IAGTVICC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                          18 CR 530 (LGS)

 5   NAZEER VICKERS,

 6               Defendant.

 7   ------------------------------x

 8                                        New York, N.Y.
                                          October 16, 2018
 9                                        5:10 p.m.

10
     Before:
11
                     HON. LORNA G. SCHOFIELD,
12
                                          District Judge
13

14                       APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     ELINOR TARLOW
17        Assistant United States Attorney

18   FEDERAL DEFENDERS OF NEW YORK
          Attorneys for Defendant
19   BY:  SABRINA SHROFF

20

21

22

23

24

25
```

IAGTVICC

1          (Case called)

2          MS. TARLOW:  Good evening, your Honor, Elinor Tarlow

3     for the government.

4          THE COURT:  Good evening.

5          MS. SHROFF:  Good evening, your Honor, on behalf of

6     Mr. Vickers, Federal Defenders of New York by Sabrina Shroff.

7     I am standing up for counsel of record, Mr. Flood, who is

8     currently on trial before Judge Cote.

9          THE COURT:  All right.  Thank you very much.  Thanks

10     for being here, and you may be seated everyone.

11          I apologize for the lateness of the hour.  Obviously

12     we have been involved in some other things.

13          So I have the government's letter, which is dated

14     October 11, I have the proposed protective order, but I don't

15     have the defense position.

16          Before we get there, I think what I would like is a

17     report from Ms. Tarlow, if you're able.  I have not looked at

18     the indictment, but I have read the letter, so I understand the

19     charges insofar as they're described in the letter.  Is there

20     anything else that you would like to tell me about the charges

21     or the information in that document?

22          MS. TARLOW:  Your Honor, only to reiterate that the

23     defendant is charged in three counts, conspiring to commit sex

24     trafficking with others who not named in the indictment, and so

25     the investigation is still ongoing, and two additional counts

IAGTVICC

1    of sex trafficking of minors by force, fraud and coercion.

2              THE COURT:  And how many victims are we talking about?

3              MS. TARLOW:  In the indictment there are two victims

4    that are anonymized, but there are additional victims who we

5    have not charged in the indictment who we believe the defendant

6    also trafficked.

7              THE COURT:  So in terms of the documents and victims

8    that are referenced in the documents and in the letter, are we

9    talking about two people or more than two people?

10             MS. TARLOW:  As of now we know of at least three

11   individuals that were trafficked by the defendant.  There may

12   be more of them.

13             THE COURT:  Okay, thank you.

14             So Ms. Shroff, I have read the government's letter.  I

15   don't believe I have anything from you.  I am not even sure

16   what it is you want that is different from what the government

17   has proposed, so why don't you tell me what and why.

18             MS. SHROFF:  Thank you, your Honor.  I will try to be

19   brief because I note the lateness of the hour and you're on

20   trial.  I did ask the government in this particular instance to

21   meet and confer in greater depth, but they declined.

22   Ms. Bracewell told me that she had an engagement to get to.

23   And I had asked her to give me the letter ahead of time, which

24   she also declined to do, I'm not really sure why.

25             Really I would like to keep it brief and tell the

4

IAGTVICC

1    Court, please, that the strictures are such that it's

2    impossible, especially for an institutional defender, to

3    proceed with such a protective order.  I also ask the Court to

4    consider that the protective order amendments that I sought

5    were amendments that other judges have granted.  Judge Berman

6    granted it in *United States v. Rahami*, R-A-H-A-M-I, and Judge

7    Sullivan in *United States v. Burgess*, 18 CR 373, also told the

8    government that the strictures were too harsh.

9                THE COURT:  Where are those proposed changes?

10               MS. SHROFF:  If I could just ask the Court to take a

11   look at the letter itself.

12               THE COURT:  I am.

13               MS. SHROFF:  Thank you.  So on page 2 there are three

14   categories, so the certain material -- the first category will

15   be designated as sensitive disclosure material.

16               THE COURT:  Right, that can be revealed only in the

17   presence of counsel.

18               MS. SHROFF:  Right.  So I do not know the volume of

19   that material, but can you imagine if every single case that we

20   had --

21               THE COURT:  Well, wait, wait.  The description of

22   materials that will be designated as sensitive is described as

23   advertisements for commercial sex activities that contain

24   sexually suggestive photographs of identified victims and

25   unidentified females.  And what they are proposing is that

1    these materials not be released into the defendant's custody or

2    be viewed without supervision.

3         So that, frankly, seems reasonable to me.  Why is that

4    not reasonable?

5         MS. SHROFF:  Because, your Honor, I don't know the

6    volume of them.  That means each time Mr. Vickers wants to

7    review his discovery somebody from my office has to literally

8    go to MCC, sit down, and review it with him.

9         THE COURT:  But in light of the fact that he is in

10   custody, turning over to him any volume of what may be viewed

11   by other inmates as pornography into the MCC or MDC, I don't

12   understand how we can do that.

13        MS. SHROFF:  It's done all the time at MCC.  This is

14   certainly not the first sex trafficking case that the MCC has

15   seen, and whatever the pictures are, if the government

16   considers it so inflammatory, I suggested a compromise.  I

17   suggested that they put all of the discovery in a Redweld, in a

18   folder, that it be given to the legal department and be held at

19   the library, that Mr. Vickers be able to access those documents

20   only while he is given the time to review his discovery and the

21   discovery be taken back.

22        It's no different than any other discovery.  If the

23   government feels that these advertisements, which, by the way,

24   your Honor, are still up, they are still public, and anybody

25   and everybody can see them.  If they are that concerned that

IAGTVICC

1    they are inflammatory in the MCC, the compromise is fair.

2            I'm not asking them to let Mr. Vickers take them to

3    his cell.  I will contact legal, legal will allow him time on

4    three or in the library to view the material and take the

5    material back.  That's what the educational department at MCC

6    is for.  Mr. Voltini is charge of it, and that's how the review

7    can continue.

8            In the alternative, I suggested to the government that

9    they redact whatever they consider inflammatory so that

10   Mr. Vickers can work with some part of the discovery.  They

11   declined to do that as well.  But I'm not really sure why the

12   compromise I have suggested is so outrageous.

13           THE COURT:  First you have all, has any other judge --

14   who you can point to in something I can read -- accepted this

15   as a compromise on that particular position?

16           MS. SHROFF:  I don't really know.  I don't know if

17   anyone else has ever sought to preclude a defendant from

18   reviewing his discovery unless for --

19           THE COURT:  Well, we're talking about a particular

20   part of that discovery.

21           MS. SHROFF:  Right.  I do know, for example, in United

22   States v. Rahami, which was a terrorism case, the concern was

23   that videotapes or sermons or literature about the greatness of

24   Al Qaeda or the Islamic State, the government did not want that

25   floating around in the MCC, and the compromise was that it

IAGTVICC

1    would be put in the law library and the defendants could go to

2    the law library and review the material there.  I'm not sure

3    how well the stricture worked, but that was the stricture that

4    was put into place.

5              THE COURT:  Let me hear from the government.  First

6    let me ask, was there a meet and confer on this or no?

7              MS. TARLOW:  So your Honor, I did not participate in

8    the phone call that Ms. Bracewell participated in.  There were

9    several phone conversations that I'm aware of, including two

10   phone conversations that I had with Mr. Flood.  At the time

11   that Mr. Flood and I spoke he had a very limited concern about

12   the proposed protective order which he just said he needed

13   additional time to consider, and then Ms. Shroff entered an

14   appearance and additional concerns were raised.

15             THE COURT:  All right.  So do you want to address

16   Ms. Shroff's last argument?

17             MS. TARLOW:  Yes, your Honor.  I can't speak to the

18   two cases that Ms. Shroff raised.  This is the first I'm

19   hearing of them and I have not had time to review them.  I will

20   note that in three other cases the same substantive protective

21   order was entered against seven different defendants.

22             THE COURT:  Over objection or no?

23             MS. TARLOW:  There was one objection in a Judge Keenan

24   case, and the order was entered over defense counsel's

25   objection.

IAGTVICC

1          THE COURT:  All right.

2          MS. TARLOW:  With respect to the substance of defense

3   counsel's argument, the advertisements, to my knowledge, some

4   of them may still be public, but some of them were posted on

5   the website of Backpage.com, which has since been shut down.

6          We also have significant concerns with the defendant

7   being able to even access and review these advertisements in

8   the law library, exposing the victims to further victimization

9   by being able to review them for an extended period of time,

10  perhaps have others review them in the library.  As we noted in

11  our letter, these are victims who not only were minors at the

12  time that they were trafficked and were taken photographs of,

13  but they were also minors who witnessed incredible violence by

14  the defendant and so are especially vulnerable.

15         MS. SHROFF:  But we have offered --

16         THE COURT:  I will take that under advisement.  Let's

17  talk about the other category.

18         MS. SHROFF:  Your Honor, we have offered to have them

19  redact the photographs.  We have offered that to them.  We

20  don't need the photographs.

21         THE COURT:  So the documents that contain the

22  photographs are what exactly?

23         MS. TARLOW:  Your Honor, they are advertisements for

24  commercial sex services that were posted on websites, and they

25  include photographs that are sexually explicit, some of the

```
1    women are barely clothed, and various other descriptions of

2    women's names and other identifying information.

3              THE COURT:  Okay.

4              MS. SHROFF:  So I participated in the conference call

5    with Ms. Bracewell, I gave her the names of the cases, and I

6    offered that they redact the names, and we stand by that.  All

7    the identifying information about the victims, Mr. Vickers

8    doesn't need to see it.  He does not need to see the

9    photographs.

10             THE COURT:  Let me ask this, if you could email me

11   with a copy to the defendant five exemplars that would fall

12   into this category of what would be designated as sensitive,

13   that way I will have an idea if we're talking about mostly

14   pictures, mostly words, any words besides names or what.  So if

15   you could try to make them representative, I would appreciate

16   is that.

17             MS. TARLOW:  Yes, your Honor.  And that would be on

18   the condition that they wouldn't be shared with the defendant?

19             THE COURT:  Yes.  Ms. Shroff, please understand that

20   they're not to be shared with anyone except counsel for

21   purposes of my deciding on the motion.

22             MS. SHROFF:  Of course, your Honor.

23             THE COURT:  All right.  Then there's another category

24   of materials which are sensitive -- sorry, these were materials

25   that could be reviewed in the presence of counsel, then there
```

IAGTVICC

1    are certain materials that could not be reviewed even in the

2    presence of counsel, they're essentially attorney's eyes only,

3    and we're talking about -- I mean I see a description, but I

4    don't fully understand what we're talking about.  Phone

5    extractions and social media returns.

6          So what are we talking about?  Chats?

7          MS. TARLOW:  Your Honor, we have complete phone

8    extractions of at least one woman who we believe that the

9    defendant trafficked, and we may have additional phone

10   extractions of other victims.

11         THE COURT:  So you mean the entire contents of her

12   phone?

13         MS. TARLOW:  Yes, your Honor.

14         THE COURT:  Well, it's conceivable that there are

15   things in her phone -- and I know that you have a system for

16   the defense to overcome this constraint, but it's possible that

17   there are things on the phone that aren't necessarily highly

18   sensitive that could be very relevant to the defense.  So what

19   do you plan to do about that?

20         MS. TARLOW:  Yes, your Honor, that is in part why we

21   are turning over the phone in its entirety so that we are not

22   having to make that initial threshold determination of what may

23   or may not be relevant, and defense counsel, after reviewing

24   the phone, can ask the government to --

25         THE COURT:  Unredact or change the designation for

1   particular parts of it.

2           MS. TARLOW:  Yes, your Honor.

3           THE COURT:  And the entire phone sounds like it's a

4   huge volume, so I don't want to put an unreasonable burden on

5   the defense.  What are we talking about in terms of volume?

6           MS. TARLOW:  Your Honor, I don't know the exact

7   kilobytes, but it is someone's phone, and so it has text

8   messages and emails, some social media content associated with

9   it.

10          THE COURT:  Okay.  Ms. Shroff?

11          MS. SHROFF:  Your Honor, how am I supposed to work

12  with discovery that I can't show Mr. Vickers in the first

13  instance?

14          And also in the second instance, look, I understand, I

15  understand the government's concerns, so that's why we offered

16  up all these redactions.  But Mr. Vickers is going to go to

17  trial.  We are going to have to unredact all of this

18  information.

19          THE COURT:  Well, some of it may be completely

20  irrelevant.

21          MS. SHROFF:  But it's very unfair for the government

22  to give me a phone dump and say you deal with it.

23          THE COURT:  So here's a question:  The real question

24  is who has the burden of reviewing this material to figure out

25  what really needs to be protected in some way, and how do we

IAGTVICC

1    deal with that?

2           MS. SHROFF:  Look, I'm happy to split it.  I don't

3    mind.  They want to give me a phone dump, they can take half

4    the dump and I will take the other half.  I'm happy to split

5    it.  I really am.  I have really gone out of my way to try and

6    figure out a way that I did not have to involve the Court in

7    this.  I'm perfectly happy to do a 50/50 split, or I'm

8    perfectly happy to have them do the first cut and give me the

9    unredacted version and see if I could live with their

10   redactions.  Either way is fine with me.

11          But I do not think that the government can have a

12   protective order that basically says -- they refuse to

13   undertake any review.  Even in *Rahami*, which was a case where

14   there was scores of terrorism-related material, Judge Berman

15   ordered the government to undertake a review every three months

16   to see if these very strict confines needed to remain.

17          I mean I don't know --

18          THE COURT:  I will stop you right there.

19          Ms. Tarlow, 50/50 sounds pretty reasonable.

20          MS. TARLOW:  May I make one final point?

21          THE COURT:  Yes.

22          MS. TARLOW:  Which is that the government fully

23   intends to identify fully relevant data for defense counsel and

24   make that identified data available.

25          THE COURT:  Under other circumstances?

IAGTVICC

1          MS. TARLOW:  Your Honor, we intend to review it as

2     relevant data, and to the extent we don't think that the

3     victim's privacy is implicated, then we would turn that over

4     unredacted or in some redacted version.

5          THE COURT:  Let me make sure I understand.  You

6     intend -- the whole idea is to get the whole phone to them so

7     that we don't hold things up, but in the meantime you intend to

8     identify relevant data and produce it to them separately,

9     either unredacted or with some kind of designation on it

10    pursuant to confidentiality agreement, is that right?

11         MS. TARLOW:  That is correct, your Honor.

12         THE COURT:  And when would that be done?

13         MS. TARLOW:  We are reviewing many victim phones right

14    now in this case and other cases that are similar, so I

15    hesitate to give your Honor a definite timeline.

16         THE COURT:  So why don't you give me a proposal on

17    that, send it at the same time that you send your exemplars.

18    Actually you should probably put that in a letter and file the

19    letter, that way everybody has it and it's filed, and then I

20    will rule at that point.  Okay?

21         MS. TARLOW:  Yes, your Honor.

22         THE COURT:  Thank you.

23         MS. TARLOW:  Your Honor, one point of clarification,

24    should we file the exemplars under seal?

25         THE COURT:  I think you should file the exemplars

IAGTVICC

1    under seal, send me a courtesy copy by email to my chambers and

2    email Ms. Shroff at the same time, if that's okay.

3                MS. TARLOW:  Yes, your Honor.

4                THE COURT:  Okay.  And I'm wondering if we want to be

5    making digital copies, expanding the universe of digital copies

6    of victims' photos.  If you would rather give me hard copies

7    and give Ms. Shroff hard copies, that's fine, too.

8                MS. TARLOW:  Thank you, your Honor.  When would your

9    Honor --

10               THE COURT:  How soon can you do it?  Because I don't

11   want to hold things up.

12               MS. TARLOW:  Would Monday be acceptable?

13               THE COURT:  That's fine.  So Monday for both for the

14   letter with your proposal as far as disclosure of phone data,

15   and then Monday also for the photos.

16               MS. TARLOW:  Yes, your Honor.

17               THE COURT:  Okay.  Anything else?

18               MS. SHROFF:  Not from us, your Honor.

19               THE COURT:  We're adjourned.  Thank you.

20               MS. TARLOW:  Thank you, your Honor.

21               (Adjourned)

22

23

24

25