J5eWvicC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                                18 Cr. 530 (LGS)

NAZEER VICKERS,

          Defendant.
                                 Conference
------------------------------x

                                 New York, N.Y.
                                 May 14, 2019
                                 4:45 p.m.

Before:

              HON. LORNA G. SCHOFIELD,

                             District Judge

                  APPEARANCES

GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
BY: ELINOR L. TARLOW
    Assistant United States Attorney

DAVID E. PATTON
    Federal Defenders of New York, Inc.
    Attorney for Defendant
BY: CHRISTOPHER A. FLOOD
    Assistant Federal Defender

1        (Case called)
2        MS. TARLOW:  Good afternoon, your Honor.  Elinor
3 Tarlow, for the government.
4        THE COURT:  Good afternoon.
5        MR. FLOOD:  Your Honor, good afternoon.  Federal
6 Defenders of New York, by Christopher Flood, on behalf of
7 Mr. Vickers, who is present at counsel table.
8        THE COURT:  Good afternoon, Mr. Flood.
9        Good afternoon, Mr. Vickers.
10        Everyone may be seated.
11        Ms. Tarlow, could I have a report, please.
12        MS. TARLOW:  Yes, your Honor.
13        The government has produced discovery to the defendant
14 in this matter, which consists of advertisements for commercial
15 sex services; extractions of certain phones that were seized as
16 well as the search warrant applications associated with those
17 phones; subpoena returns, among other items.
18        Defense counsel is reviewing that evidence.
19        It's my understanding that we have proposed a briefing
20 schedule for your Honor as well as a conference date.
21        THE COURT:  OK.  Thank you.
22        Mr. Flood, do you want to tell me a little bit about
23 your anticipated motion?
24        MR. FLOOD:  Yes, your Honor.  I'm happy to.
25        The principal area of concern, and I'm not saying it's

1    exclusive, there's other, I would say, smaller issues, but the
2    main evidence, the main, most damaging phone evidence happens
3    to be associated with two cell phones that were seized from
4    Mr. Vickers pursuant to arrest on, I believe, April 23 of last
5    year.  That arrest was for, I believe, turnstile jumping or
6    theft of services, that type of arrest, and it was dismissed
7    the next day.  The phones were never returned to Mr. Vickers,
8    so one of the things that the government and I have been
9    discussing is I need the paper trail for that arrest and that
10   property.
11            It then became the subject of a search warrant
12   application here in this courthouse.
13            THE COURT:  The phones.
14            MR. FLOOD:  The phones, and -- those very same ones.
15   And it's my recollection the warrant application simply says
16   they were seized as part of an arrest.  I believe that that's
17   an unlawful seizure of property.  The case was dismissed.  If
18   it was the 23rd that Mr. Vickers was arrested, the case was
19   dismissed on the morning of the 24th.  He made attempts to
20   retrieve that property and was rebuffed by the New York City
21   Police Department.
22            THE COURT:  And what's the significance of what was on
23   the phones?
24            MR. FLOOD:  There is some incriminating information on
25   those phones.  I've had other discussions with the government

1   that has been clarifying, and they've been very forthcoming and
2   I appreciate that from Ms. Tarlow, about, for example, there's
3   an allegation, broadly, that two of --
4       THE COURT:  An allegation of?
5       MR. FLOOD:  Broadly, broadly, that there are two minor
6   victims, minor victim one and two, that resided at a DHS
7   facility in Westchester.  I believe that is Hawthorne, the
8   Hawthorne school.  There have been a number of cases in this
9   courthouse right now, one of which the government informs me
10  that the jury's deliberating on, having been on trial before
11  Judge Rakoff, that are all associated with sex trafficking out
12  of Hawthorne.
13      My understanding, based on discussions with the
14  government, is that there is not a direct link between
15  Mr. Vickers and Hawthorne.  That has been the subject of a
16  tremendous amount of study on our end going through those
17  phones, trying to find if there's any phone number that might
18  cross, but the government relieved us of that just now, and
19  that's very helpful.
20      And then -- I'll just close it off -- the third area
21  of discussion with the government today, the victim, originally
22  victim 1, now coconspirator as to Count One, is an adult who we
23  believe is a woman named Jamisha Jackson.  There's broad
24  allegations in the warrant application for the search of the
25  cell phone that Mr. Vickers forced Ms. Jackson to go on a

J5eWvicC

1   multistate -- I don't want to belittle it but a fraud spree
2   involving credit cards.
3       My request to the government is if there is any paper
4   support, any case information, any police reports, essentially,
5   that I would have a need to see that.  Certainly if they intend
6   to introduce it at trial, it would be discoverable, but it
7   would be material to our defense, because we believe those
8   allegations are false.
9       And I'm sorry.  I misspoke when I said I had -- I have
10  one last thing, which is that in that warrant application and,
11  of course, the bond proceedings in this case, beginning last
12  summer, Ms. Jackson alleged that Mr. Vickers caused her brain
13  damage.  I've asked the government for the medical records or
14  any other corroboration of that allegation.  We believe that is
15  entirely false, and I credit Ms. Tarlow for seeking that
16  information, but I understand the agents have not been able to
17  obtain it yet, and I don't know -- what I can say is I don't
18  believe either counsel knows whether they do exist at this
19  point.
20          THE COURT:  In terms of the motion, what we're talking
21  about is a motion to suppress the evidence from the phones on
22  the ground that the seizure of the phones was unlawful.
23          MR. FLOOD:  That's right.  That's the principal
24  motion.
25          THE COURT:  OK.

1       MR. FLOOD:  And then there may be some follow-up *in*

2  *limine* motions around what I've just spoken about, but I wanted

3  to make sure the Court had that full picture.

4       THE COURT:  OK.  Thank you.

5       MR. FLOOD:  Very good.

6       THE COURT:  Anything else we should discuss?

7       MS. TARLOW:  Not from the government, your Honor.

8       MR. FLOOD:  Nothing from the defense.

9       THE COURT:  All right.  I'll just put the motion dates

10 on the record.

11      I understand the parties have agreed that motions will

12 be filed July 25; responses August 26; any reply September 24.

13 We'll have a status conference September 10 at 11 a.m., and --

14 sorry, typographical error, October 10 at 11 a.m.

15      MR. FLOOD:  October 10?

16      THE COURT:  Yes.

17      And I would use the conference to render an oral

18 ruling on the motions or discuss anything else that needs to be

19 discussed; if nothing, I would cancel it.

20      Is there anything else we should deal with?

21      MR. FLOOD:  I only have a question for the procedure.

22 Should the Court determine, and frankly, standing here, I don't

23 know if we're going to be asking for that, but for an

24 evidentiary hearing, would we take up scheduling that in

25 October, or would that be something we'd just seek to do by a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J5eWvicC

1    letter?
2              THE COURT:  I won't get your replies until September,
3    so as soon as I figure out if we need an evidentiary hearing,
4    then I'd schedule it.  If there were time, I'd schedule it on
5    the same day, but if not -- and it would obviously have to be a
6    day when the witnesses were all available and the lawyers, so
7    it's probably too soon to say.
8              MR. FLOOD:  Very good.  Thank you.
9              THE COURT:  OK.
10             Anything else?
11             MS. TARLOW:  Your Honor, we'd move to exclude time
12   until the next conference date in order for defense counsel to
13   continue to review discovery, prepare any motions, and for the
14   parties to engage in any pretrial disposition discussions.
15             THE COURT:  All right.
16             MR. FLOOD:  No objection.
17             THE COURT:  Any objection?
18             MR. FLOOD:  No.
19             THE COURT:  Hearing no objection, I will exclude the
20   time between now and July 25 to allow the defendant to review
21   discovery, prepare motions and the parties to discuss any
22   disposition.  I find that the ends of justice served by
23   excluding the time between now and July 25 outweigh the best
24   interests of the public and the defendant in a speedy trial,
25   under 18 U.S.C. 3161(h)(7)(A).

J5eWvicC

1              Thank you.  We're adjourned.
2              MS. TARLOW:  Thank you, your Honor.
3              MR. FLOOD:  Thank you, your Honor.
4              (Adjourned)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300